## 6818.   TAYLOR v. THE STATE.

1. "No person shall be compelled to give testimony tending in any manner to criminate himself." Article 1, section 1, paragraph 6, of the constitution (Civil Code, § 6362). "No party shall be required to testify as to any matter which may criminate or tend to criminate himself, or which shall tend to work a forfeiture of his estate, or which shall tend to bring infamy or disgrace or public contempt upon himself or any member of his family." Civil Code, § 4543.

(a) "The mode of impeaching a witness by proof of character or reputation is laid down in the code (Penal Code [1910], § 1053; Civil Code [1910], § 5882). The code specifies the questions to be propounded, and 'impliedly excludes all others.' Barnwell v. Hannegan, 105 Ga. 400 (31 S. E. 116.)   See also Gordon v. Gilmore, 141 Ga. 348 (7), 349, 350 (80 S. E. 1007). It provides for impeachment by proof that the 'general character' of a witness is bad, and that from that character the impeaching witness would not believe him on oath; it does not provide for impeachment by proof as to a special kind of character, such as character for chastity, or even veracity." Rudulph v. State, 16 Ga. App. 354 (85 S. E. 365). See, in this connection, McDuffie v. State, 121 Ga. 580 (7, 8), 584 (49 S. E. 708) ; Taylor v. State, 83 Ga. 647 (4), 657 (10 S. E. 442) ; Allred v. State, 126 Ga. 537 (3) ; Doggett v. Simms, 79 Ga. 253 (4 S. E. 909) ; Huff v. State, 104 Ga. 521 (4), 524 (30 S. E. 808) ; Johnson v. State, 48 Ga. 116 (3) ; Georgia R. Co. v. Lybrend, 99 Ga. 421 (5), 422 (27 S. E. 794) ; Wheeler v. State, 112 Ga. 43 (3), 45 (37 S. E. 26).

2. There was no error in the refusal of the court to grant a mistrial because of a reference by the solicitor-general to matters outside of the record, in view of the explanatory note touching this ground of the motion, and of the further fact that the judge instructed the jury to disregard entirely such extraneous matter. The harmful effect, if any, was removed by the instruction given by the court.

3. There is no merit in the several exceptions to the charge of the court as to the good character of the defendant. The charge was in exact accord with the ruling of this court in Taylor v. State, 13 Ga. App. 715 (79 S. E. 924), which controls in this case.   .

4. A specific intent to kill will not be presumed where death does not ensue, and the existence of such intent is a question of fact to be passed upon by the jury. The law imputes the intention to kill where there is in fact a killing, but not where there is no killing. In a trial for assault with intent to murder, the question of whether or not there was an intention to kill should be submitted to the jury by the court.

5. The charge of the court sufficiently covered the law as to the right of the defendant to resist an alleged illegal arrest, and there was no error in declining to give the requested instruction on that subject.

6. There is no substantial merit in any of the exceptions to the charge of the court, or to the failure to give any of the various instructions requested, not specifically mentioned in the foregoing headnotes, since the charge given correctly and sufficiently covered all the issues involved.

Nor was there reversible error in the exclusion or admission of any testimony not referred to above.

DECIDED APRIL 17, 1916.

Indictment for assault with intent to murder; from Bibb superior court—Judge Mathews.    July 12, 1915.

*John R. Cooper,* for plaintiff in error.

*John P. Ross, solicitor-general,* contra.

WADE, J.    When this case was formerly before this court (*Taylor* v. *State,* 13 *Ga. App.* 715), the court said, as to the testimony then under review, that "a verdict finding [the defendant] guilty of assault with intent to murder would have been fully authorized by the testimony;" and it is apparent from the record that the testimony in the subsequent trial fully authorized the verdict now under review, since the case made out for the State at the former trial was materially strengthened at the last trial by the testimony of witnesses not heard on the former trial.

1.    The ruling stated in the first headnote needs no amplification.

2.    It appears from the motion for a new trial that counsel for the defendant moved the court to declare a mistrial because of the following statement by the solicitor-general in his concluding argument to the jury:    "Gentlemen of the jury, Mr. Cooper is now taking a case from Washington county, Georgia, charged with the killing of a white man, to the Supreme Court of the United States, upon the ground that there were no negroes on the jury."    The note by the court as to this ground of the motion is as follows:    "What transpired as to the motion for mistrial, referred to in this ground, is substantially as follows:    Mr. Cooper, defendant's counsel, during his argument to the jury had made an attack upon the testimony of the State's witness, Bertha Thomas, upon the ground that she was a negro, arguing that a negro's testimony should be discredited by the jury in a case of the kind on trial, and had used sharp personalities in reference to the solicitor-general and his reliance on negro testimony.    The solicitor-general, in his concluding argument, referring to Mr. Cooper's argument as to the character of the negro's testimony, referred to the action of Mr. Cooper in taking a case, where a negro had been convicted of murder, from the State court to the United States Supreme Court, on the ground that there were no negroes on the jury trying the case.    Mr. Cooper thereupon made the motion for a mistrial re-

ferred to, and the court refused to declare a mistrial, the motion
and the action of the court in overruling the motion being in the
following language: Mr. Cooper: 'I move for a mistrial, because
the solicitor told the jury that on account of my love for the negro,
I am taking to the Supreme Court of the United States a case,
on account of my love for the negro; and the argument is entirely
improper and unfounded, because that is not the reason I am
taking the case to the Supreme Court of the United States, but
because I don't believe the negro ought to have been hung.' The
court: 'I will not grant a mistrial, but I think the statement of
the solicitor-general is out of order and not a part of this case,
and the jury will not consider that statement as to any case being
carried to the United States Court. You will try this case, gen-
tlemen of the jury, according to the sworn evidence in this case,
and not on the statements of counsel.'"

Considering the precise utterance of the solicitor-general in con-
nection with the note relating to the ground of the motion based
upon the court's refusal to declare a mistrial on account of such
remark, it is apparent that there was not, in the actual words em-
ployed by counsel for the State, any such reflection upon counsel
for the accused as would necessarily tend to disparage counsel, or
to improperly destroy the influence or effect of his preceding argu-
ment to the jury. Counsel for the accused appears to have based
his motion for a mistrial on his own assertion that counsel for the
State had told the jury that on account of his "love" for the negro
race he was taking to the Supreme Court of the United States a
certain case for review, but the actual words of the solicitor-general
do not bear out the interpretation placed thereon by counsel for
the accused. The judge's note makes the matter perfectly clear.
The State had introduced a negro witness against the accused, and
counsel for the defendant had sharply criticised the solicitor for
seeking to convict the defendant, a white man, upon the evidence
of a negro; whereupon counsel for the State retorted in his con-
cluding argument by using the words complained of. The effect
of these words was not necessarily to disparage counsel for the
defendant, to reflect upon him in any way, or to destroy the legiti-
mate value of any proper argument previously addressed by him
to the jury, but merely applied to him the argumentum ad homi-
nem, by calling the attention of the jury to conduct on his part

which was seemingly at a variance with the position then assumed by him in regard to the value of negro testimony, and apparently sought to indicate that his position in the case on trial was inconsistent with his position at other times and places. The statement made by the solicitor-general was undoubtedly improper, since it injected into the case matter entirely extraneous to the record. The fact that counsel for the defendant had likewise previously departed from the record and attempted to depreciate the value of the testimony delivered by a certain witness, solely because that witness was a negro, did not amount to a legal excuse or justification for the natural retort made by the solicitor-general, since two wrongs do not make a right; but the departure from the record actually indulged in by the solicitor-general presented to the jury no conclusion unauthorized by the evidence, touching the guilt or innocence of the accused, injected no unwarranted view or statement calculated to prejudice the jury, and cast no odium upon him or his counsel.

It is true that in criminal trials great injustice may be done those accused of crime by remarks of counsel not authorized by the evidence; but, on the other hand, it can not be assumed that every irrelevant statement falling from the lips of counsel for the State, or that every hasty reply to opposing counsel, or every introduction of matter outside of the evidence, will require the grant of a mistrial. If this were true, very many arguments for the State would be emasculated and the State's officer be often compelled to keep silence, and refrain from replying to deductions and conclusions drawn by counsel for the accused which might be obviously specious or wholly illogical and unwarranted. It is not only the duty, but generally the pleasure of counsel enjoying the advantage of the concluding argument, to expose what he may consider the fallacious reasoning of his opponent; and to grant a mistrial in every case where counsel for the State might, in the fervor of advocacy, himself indulge in a fallacious argument or an improper reply to an improper argument made by his opponent, and thus bring about a new trial at great expense to the country, and notwithstanding the evidence against the accused may be almost conclusive, would be the height of judicial folly. If, however, the improper argument or remark by the State's counsel is allowed to pass without rebuke by the trial judge, irreparable

harm might often result to the accused, even where the injury
thereby wrought is not readily apparent; and, as often held by this
court and the Supreme Court, some remarks of counsel are so
grossly improper and so manifestly injurious that even rebuke by
the court will not remove from the minds of the jurors the im-
pression thereby produced, and the injury remains, notwithstand-
ing a rebuke to offending counsel from the court.   In such cases
a mistrial should, of course, be granted on application.   In this
case, however, it does not appear to us that counsel for the State
in anywise reflected upon counsel for the defendant, or that the
remark complained of was calculated to bring into contempt or
to excite the prejudices of the jury against him and thereby against
his client.   Conceding that such an intimation might be injurious,
the State's counsel said nothing whatever as to any "love" borne
by counsel for the defendant towards the negro race, but this idea
was first suggested by counsel for the defendant himself in his
motion for a mistrial, in interpreting the remark of the solicitor,
and it does not appear to us, in the light of the judge's note, that
his interpretation was a correct one.   While declining to grant a
mistrial because of the remarks complained of, the court promptly
instructed the jury to disregard the statements of the solicitor-
general, and rebuked him by saying that the statement complained
of was out of order and not a part of the case, and explicitly in-
structed the jury not to consider that statement, but to try the
case according to the sworn evidence.   It does not appear to us
that the irregularity complained of was so serious that the prompt
rebuke from the court to the solicitor, and the instruction to the
jury to disregard what had been said by the solicitor, were in-
sufficient in this instance to remove all injurious effects that might
possibly result therefrom or that might naturally be expected.

While, therefore, recognizing the importance of confining coun-
sel, in argument of cases before juries, to a discussion of the testi-
mony and the legitimate inferences and deductions to be drawn
therefrom, we do not think that the failure of the court to grant
a mistrial in this case, under the circumstances appearing from
the statement of the presiding judge, requires the grant of a new
trial.

3.   The 10th ground of the amendment to the motion for a new
trial complains that the court erred in charging the jury as fol-

lows: "There is evidence in this case as to the good character of the defendant. Proof of good character, in a criminal case, is a substantial right; it is substantial evidence that the jury ought to consider in determining the question of the guilt or innocence of the defendant. Such proof may in itself generate a reasonable doubt. Even if all the other evidence in the case was such as to satisfy the mind to a reasonable and moral certainty and beyond a reasonable doubt, yet if the proof of good character of the defendant should be sufficient to raise a reasonable doubt, where otherwise no reasonable doubt would arise in the consideration of the case, why then it would be the duty of the jury to give the prisoner the benefit of the doubt so arising. If, however, the guilt of the defendant is proved to the satisfaction of the jury beyond a reasonable doubt, and the proof of good character does not have the effect to raise a reasonable doubt as to the guilt of the accused, then you would be authorized to convict him regardless of his proof of good character—the question in the case being whether or not he has committed the crime or perpetrated the act constituting the crime; and you would consider his proof of good character as bearing upon that proposition, and, after considering all the evidence in the case, the proof of good character leaves a reasonable doubt in your minds as to the guilt, it would be the duty of the jury to give him the benefit of that doubt and acquit him." This charge is excepted to as not sufficiently instructing the jury "that good character alone is sufficient to generate a doubt, but it is also sufficient to produce an acquittal," and because "the court nowhere in his charge on good character instructed the jury that the defense of good character alone is sufficient to work an acquittal;" also "because the court did not give the prisoner the benefit of his defense on his good character, but instructed the jury that, taken into consideration with all the other evidence, the good character of the accused, if they had a doubt about his guilt, then they should acquit;" "the defendant excepted to this charge for the reason that good character alone is sufficient to generate a doubt and work an acquittal, and it was prejudicial error for the court to fail in this connection to instruct the jury on this golden rule in favor of the prisoner."

When this case was formerly here for review (13 *Ga. App.* 715), the judgment of the lower court was reversed solely for the reason

"that the judge erred in his instructions to the jury as to the weight and effect of the testimony which had been submitted touching the good character of the accused." From a comparison between the instructions here complained of and the ruling heretofore made on the subject by this court, it is apparent that the trial judge fully complied with the ruling then made, which, though apparently at variance with its decision in an earlier case (*Maddox* v. *State,* 9 *Ga. App.* 448, 71 S. E. 498), and with decisions of the Supreme Court there cited (*Fordham* v. *State,* 125 *Ga.* 791, 54 S. E. 694; *Brazil* v. *State,* 117 *Ga.* 32, 43 S. E. 460), must, as res judicata, be followed in this particular case. *Sou. Bell Tel. Co.* v. *Glawson,* 140 *Ga.* 507 (79 S. E. 136).. One ground of exception to the charge is that the court did not go far enough and tell the jury that good character alone is sufficient to generate a doubt of the guilt of the accused. The .court said: "Such proof [of good character] may *in itself* generate a reasonable doubt. Even if *all* the other evidence in the case was such as to satisfy the mind to a reasonable and moral certainty and beyond a reasonable doubt, yet if the proof of good character of the defendant should be sufficient to raise a reasonable doubt, where otherwise no reasonable doubt would arise in the consideration of the case, why then it would be the duty of the jury to give the prisoner the benefit of the doubt so arising." It is difficult to imagine what more could have been said by the trial court to impress upon the minds of the jury the fact that good character alone might be sufficient to generate in their minds a doubt as to the guilt of the accused. So, also, the complaint that the court failed to instruct the jury that proof of good character might be sufficient to authorize the acquittal of the defendant is wholly without any legitimate basis, since the court explicitly instructed the jury that if, "after considering all the evidence in the case, *the proof of good character* leaves a reasonable doubt in your minds as to the guilt, it would be the duty of the jury to give him the benefit of that doubt and acquit him."

The remaining exception to this charge is that the court advised the jury that proof of the good character of the accused, "taken in consideration with all the other evidence," might create a doubt which would authorize an acquittal, and the court erred therein because good character alone might be sufficient to generate a doubt and work an acquittal. There is no basis for this exception. The

court explicitly told the jury, in the excerpt complained of, that even if all the evidence satisfied their minds to a moral and reasonable certainty and beyond a reasonable doubt of the guilt of the accused, yet if the proof of good character of the defendant should be sufficient to raise a reasonable doubt, "where otherwise no reasonable doubt would arise in the consideration of the case, then it would be the duty of the jury to give the prisoner the benefit of the doubt so arising." Clearly this charge authorized the jury to give the accused the benefit of the doubt created solely by the testimony as to his good character, apart from, instead of in connection with, the other evidence in the case.

4. The defendant complains that the court erred in the following instructions to the jury: "Now in this case the charge is assault with intent to murder. If you believe the defendant made an assault upon H..E. Maffett with a weapon likely to produce death, and with the intention of killing him, under such circumstances as that the killing would have been murder had the attempt succeeded, then you would be authorized to find him guilty under this indictment; that is to say, you would be authorized to find him guilty, and that would mean guilty of assault with intent to murder." This charge is excepted to on the ground that in a trial for assault with intent to murder no presumption of an intent to kill exists, but the intention to kill is a matter of proof, and the State must show beyond a reasonable doubt that the defendant intended to kill the person assaulted, before the jury would be authorized to find the accused guilty of the offense of assault with intent to murder. It is so well settled that on the trial of one accused of assault with intent to murder, the existence or non-existence of a specific intent to kill is a matter of fact for determination by the jury from the evidence, and not the subject of any legal presumption, that no discussion of the reason for the rule is necessary. It was said in *Gallery* v. *State,* 92 *Ga.* 463 (17 S. E. 863): "Where death results from the unlawful use of a deadly weapon, the law by presumption imputes to the slayer an intention to kill; but where death does not result, intention to kill is not matter of legal presumption but matter for inference by the jury. Consequently, it narrowed the functions

of the jury too much to instruct that 'if under this indictment a killing had ensued and if the crime would have been murder, then the defendant would be guilty of assault with intent to murder.'" In *Lanier* v. *State,* 106 *Ga.* 368 (32 S. E. 335), the Supreme Court said: "On the trial of one charged with the offense of an assault with intent to murder, it is error for the court to charge the jury: 'If the defendant cut his wife with a weapon likely to produce death, with malice, under such circumstances as would have made him guilty of murder had death ensued, then I charge you that he would be guilty of the offense of an assault with intent to murder.'" The doctrine is discussed in the case of *Duncan* v. *State,* 1 *Ga. App.* 118 (58 S. E. 248), in which Judge Russell, speaking for the court, said: "The intention to kill is an absolutely essential ingredient of the offense of assault with intent to murder, and must always be proved. It can not be presumed or deduced, as stated by the learned trial judge who presided in this case. Discussion of this proposition is useless, because it has been so frequently decided as to require no elaboration." In *Patterson* v. *State,* 85 *Ga.* 133 (11 S. E. 620, 21 Am. St. R. 152), it was said: "The law will impute the intention to kill where there is a killing but not where there is none. . . That an effect not produced, and which if produced would have constituted a different offense from that actually committed, was intended, is surely for determination by the jury as a matter of fact." In *Napper* v. *State,* 123 *Ga.* 571, 573 (51 S. E. 592), it was said: "It would have been error to charge that if the defendant cut Barlow with a weapon likely to produce death, under such circumstances as would have made him guilty of murder had death ensued, he would have been guilty of the offense of assault with intent to murder."

The law on this point being well settled and perfectly clear, it only remains to be determined if the charge complained of violates the established rule by failing to instruct the jury that the intention to kill must be shown and can not be presumed, as would have been the case had death resulted. The court charged the jury: "If you believe the defendant made an assault upon H. E. Maffett with a weapon likely to produce death and with the intention of killing him, under such circumstances as that the killing would have been murder had the attempt succeeded," then you would be authorized to find him guilty of assault with intent to

murder.  Without the words "and with the intention of killing him," the instruction would have been clearly erroneous, but with this qualification included, notwithstanding the instruction as a whole may somewhat lack precision, it is obvious that the court did not suggest to the jury that any presumption of an intention to kill existed against the defendant, but made it plain to them that they must believe not only that the defendant made an assault upon Maffett with a weapon likely to produce death, but that he made an assault *"with the intention of killing"* Maffett.  The law does not imply an intent to kill where there is no killing, and the court in effect so instructed the jury, since he directed them to find a verdict of guilty of assault with intent to murder only in the event that they believed (from the evidence) that the accused entertained the intention of killing the person assaulted.  Not only is this excerpt itself not subject to objection, but the court elsewhere gave to the jury the following charge, which in effect instructed the jury that they must find a deliberate intention on the part of the accused to unlawfully take away the life of the person assaulted, before they would be authorized to find him guilty of assault with intent to murder.  The instruction referred to was as follows:  "Now in this case the State contends that the defendant made an assault upon Maffett with a weapon where the killing would have been murder, because the State says no considerable provocation is shown, and the State also contends the circumstances show a deliberate intention unlawfully to take away the life of Maffett.  Now, you see whether that is true or not—whether that is proven in this case to a reasonable and moral certainty and beyond a reasonable doubt.  If it is not proven in this case in this way and to this extent, then you would not be authorized to find him guilty of assault with intent to murder in this case."  It will be observed that the court in this excerpt instructed the jury that "the State also contends the circumstances show a deliberate intention unlawfully to take away the life of Maffett.  .  .  If it is not proven in this case *in this way and to this extent,* then you would not be authorized to find him guilty of assault with intent to murder in this case."

5.  The 19th and 20th grounds of the amendment to the motion for a new trial may be considered together.  The 19th ground complains that the court erred in declining to give the following

requested charge to the jury: "If you believe in this case that Maffett was making an illegal arrest on the person of Taylor, and the defendant shot him to prevent the illegal arrest, then I charge you that you can not convict him of the offense of assault with intent to murder." Manifestly the court did not err in declining this request. As was said in *Thomas* v. *State*, 91 *Ga.* 204, 206 (18 S. E. 305), "Generally it is not murder, but manslaughter, to kill an officer or other person to prevent an illegal arrest. . . There can be no assault with intent to murder where the homicide, if committed as intended, would be only manslaughter. Consequently shooting at an officer without killing him, if done to prevent an illegal arrest, is *prima facie* not an assault with intent to murder, but the statutory crime of shooting at another described in section 4370 of the code" (Penal Code of 1910, § 115).

It may be said, in passing, that whether or not the person assaulted was in fact attempting to make an arrest was an issue in the case which, under the testimony, the jury could have and may have resolved against the accused. In *Holmes* v. *State*, 5 *Ga. App.* 166 (62 S. E. 716), this court said: "Every person has the right to resist an illegal arrest, whether attempted by an officer or by a private individual, and, in resistance, may use as much force as is necessary for the purpose, and no more." In the light of this clear pronouncement of the law, it is apparent that the court properly refused the request quoted, since it was not suggested in the request as submitted that the person resisting the illegal arrest was authorized to use only as much force as might be necessary for the purpose and no more. The requested charge would have amounted to an instruction to the jury that one might resist an illegal arrest by making a deadly assault upon the person attempting the arrest, where no such assault was necessary to prevent the arrest. The court properly instructed the jury, in accordance with the rule referred to in the *Holmes* case, supra, that the defendant was entitled to use as much force as necessary to prevent the illegal arrest, and it was left with the jury to determine whether the deadly assault made on the person assaulted was in fact necessary to prevent the alleged attempted illegal arrest.

The 20th ground of the motion for a new trial complains of the refusal to give to the jury the following charge: "The defendant has two defenses in this case, one of self-defense and the other to

prevent an illegal arrest. If the defendant shot in order to save his own life you could not convict him of any offense. If you believe the defendant shot in order to resist an illegal arrest or an attempted illegal arrest, then in that event you could not convict him of assault with intent to murder." It is contended that this particular charge was approved as correct by this court when the former trial was reviewed. It will be seen, on reference to the opinion of this court (13 *Ga. App.* 716), that this identical request was formerly made and was refused by the judge. It does not, however, appear that this court approved this request. The court said that if an arrest was attempted by the prosecuting witness, "an instruction embodying the principle relating to resistance to an illegal arrest, or an illegal attempt to arrest, would be required on request." The court further said that upon the next trial, if requested to do so, the court should charge the jury that "if they believe from the evidence, or from the statement of the accused, that the prosecuting witness was attempting illegally to arrest him, he would have the right to resist and use whatever force was necessary to prevent an illegal arrest, and that if, in resistance of illegal arrest, he used no more force than was necessary for that purpose, he would be justified." The judge gave this precise instruction to the jury in his charge and substantially covered the law touching resistance to an illegal arrest. It was not error to refuse to instruct the jury as requested, since the request as stated was too broad to embody an accurate statement of the law.

6. As to all the remaining exceptions not specifically referred to in the headnotes, it is enough to say that they are without substantial merit, and that no good purpose would be subserved by attempting a discussion of the legal principles involved, or in the application of these principles to the precise exceptions made. No new questions are raised by the various grounds of the motion not specifically ruled upon; and to attempt, in the limited time at our disposal, to demonstrate fully and clearly how and why the trial court committed no error in admitting or excluding testimony, or in charging or refusing to charge, would require a discussion of twenty-seven special grounds of the amendment to the motion for a new trial, not already discussed.

Without intending in the slightest degree to reflect upon coun-

sel for the accused, it may not be inappropriate to quote from the opinion in Lambert *v.* Barrett, 159 U. S. 660 (16 Sup. Ct. 135, 40 L. ed. 296), to which our attention is called in his brief and from which counsel quotes: "It is natural that counsel for the condemned in a capital case should lay hold of every ground which, in their judgment, might tend to the advantage of their client, but the administration of justice ought not to be interfered with on mere pretext." This is not a capital case; nor do we believe that able counsel for the accused intentionally resorted to any pretext to save the accused, but we are quite willing to bear testimony to his indefatigable industry and loyal persistency and to believe that he has not neglected to "lay hold of every ground" which in his judgment might possibly tend to the advantage of his client.

*Judgment affirmed. Russell, C. J., absent.*