25389.   BARTON *v*. THE STATE.

DECIDED APRIL 7, 1936.

*Maddox, Matthews & Owens, J. G. B. Erwin,* for plaintiff in error.
*John C. Mitchell, solicitor-general,* contra.

GUERRY, J. Glenn H. Barton was convicted of seduction. He complains of the overruling of his motion for new trial. At the time of the alleged seduction, in July, 1932, the prosecutrix was fifteen years old, and the defendant eighteen. They met for the first time on Sunday, July 3. The evidence fails to fix with definiteness the date in July when the first intercourse took place. The prosecutrix testified: "One night he came down, and we went to a show in town; and when we started back and before we got home he turned off a road leading to Yarborough's pond, and he stopped on that road, and he embraced me and he says, 'Edna, do you love me?' and I says, 'Certainly, Glenn, I love you more than anybody else in the world;' and he says, 'Do you love me enough to marry me?' and I says, 'I don't know about that. I am rather young yet, and I don't know anything about the ways of the world much,' and he says, 'Answer me,' and I says, 'Yes,' and he said then, asked me the question, 'Will you marry me sometime?' and I answered, 'Yes.'" On cross-examination the witness testified: "This first intercourse occurred on the road leading to Yarborough's pond." It is not shown how many trips were made to Yarborough's pond, or on which trip the intercourse occurred. The defendant left Gordon County on July 22, to go to Chicago, and did not come back until the latter part of September. The prosecutrix further testified: "I couldn't tell you how many times I had intercourse with him before he left for Chicago; it was most all the time, so many I can't recall. He came three or four nights out of every week, and of course that don't mean I had intercourse with him every time, but practically every time he came. . . I allowed him to have intercourse with me because I loved him. Prior to that time he had made love to me and told me he loved me. I believed him. He talked about marrying me. He said we were going to be married. As to what he said about loving me and marrying me at the time I allowed him to have the first intercourse, he says, 'You don't care if we have intercourse now, do you, since we are already engaged?' And I says, 'I don't know.' . . I had confidence in him and believed him, and yielded to him by reason of that and by reason of my love for him. He promised to marry me and I believed he would marry me, and I allowed him to have intercourse because of that." A number of letters written by the defendant, at this time, to the prosecutrix, were introduced in

evidence. These letters were couched in the most ardent love language, and were poetic in form, not to say content. The spirit and fervor, if not the poetic polish, of Byron were present in them. The prosecutrix testified that when the defendant returned from Chicago their relations continued and sometime in November she became pregnant, and a child was born on August 29, 1933. The defendant admitted having sexual intercourse with the prosecutrix, but denied any talk or promise of marriage at any time. Eight letters written by him to the prosecutrix were introduced in evidence by the State; and though couched in the most ardent love language, they contained no reference to marriage. Some of them, according to the testimony of the prosecutrix, were written before and some after the first intercourse. In his statement at the trial the defendant said that he met the prosecutrix on July 3, and had intercourse with her on a night or two later while they were in the back seat of an automobile, the front seat being occupied at the time by her sister and another boy, and that these relations continued until July 22. He wound up his statement to the jury by saying: "I am guilty of fornication, but I am not guilty of seduction." He introduced letters written to him by the prosecutrix while he was in Chicago, containing the most suggestive and lascivious language. One was written in Atlanta, where she and her sister had come with two boys and spent the night at a tourist camp. She explained this by saying that they came to visit a girl friend in Atlanta, but the friend was not there, and they were at the mercy of the boys they came with. Any improper relations with the other boy at this time were denied by the prosecutrix. This boy, however, testified that he spent the night with her, and had sexual intercourse with her. We will not set out the evidence in further detail, or go into any discussion thereof, as a new trial will be granted because of errors committed during the trial.

■ It is complained that the court, after stating the charge of seduction as set forth in the indictment, charged the jury as follows: "There is also embraced within the charge and within the range of the evidence in this case the lesser offense of fornication. He pleads not guilty to each of these charges, and the plea and the charges form the issues which you are to try and determine by your verdict." The error assigned upon this charge is, that by his statement the defendant admitted his guilt of fornication, and that

he was entitled to have this issue eliminated from the consideration of the jury and have the single issue of seduction tried, and that to charge the jury on this subject, saying that it was an issue before them, placed him in a false and losing position with respect to fornication, which discredited his position as to the main issue of seduction, and might have been the deciding factor before the jury in finding him guilty of seduction. It has been held many times in civil cases that it is the duty of the court to inform the jury as to the issues submitted by the pleadings; and that if any issue has by any means been eliminated, it should be called to their attention. See *Bank of Rome* v. *Langston,* 44 *Ga. App.* 465 (161 S. E. 637), and cit. However, we do not think it tenable, where one is charged with a crime which embraces one of lesser degree, that the judge should not submit to the jury the question whether defendant is guilty of the lesser crime, if not found guilty of the greater, because he may have admitted his guilt as to the lesser. By his plea of not guilty he denies each and every charge made in the indictment. The jury in a criminal case are the judges both of the law and the facts, and the judge has no power to direct a verdict of guilt. The defendant's admission that he was guilty of fornication certainly would not make inadmissible evidence to show his guilt thereof (*Currie* v. *State,* 159 *Ga.* 775, 126 S. E. 835), and we can not say that it was in any way prejudicial to his defense to the charge of seduction that the judge did not withdraw from the jury the issue as to his guilt of the lesser crime embraced within the allegations of the indictment.

■ Complaint is made that the court refused the following requested instruction: "If you find that Edna Hughes consented and had sexual intercourse with the defendant, and thereafter the defendant by persuasion and promises of marriage induced her to repeat the act, the defendant could not be found guilty of seduction." After a careful reading of the evidence we think the evidence as to the time of the proposal of marriage and the first sexual intercourse between the parties was such that the above principle should have been given in charge to the jury. If the consent to the sexual intercourse had been procured before the promise of marriage and the act had been consummated, a promise afterwards made would not make the prior sexual act seduction. If the consent to sexual intercourse is part of the original agreement to

marry, or bethrothal, and is procured solely by the undertaking to marry and nothing more, the transaction may be coarse and corrupt traffic, and not seduction. *Jones* v. *State,* 90 *Ga.* 616, 623 (16 S. E. 380). This case appears to us to be extremely close on its facts; and the defendant, where proper request is made, is entitled to have the law made specifically applicable to the facts as they are made to appear.

■ Error is also assigned upon the argument of the solicitor-general to the jury, which was in substance that if the defendant went to the penitentiary in this case it was his own fault, as he could have stopped the prosecution at any time by marrying the prosecutrix; and that the solicitor would then and there make the proposition that if the defendant would marry her and give a name to the little boy (pointing at the child then in court with his mother, Edna Hughes) the prosecution would then be stopped and the case against him dismissed. A motion was made to declare a mistrial on account of this argument, as being unfair, improper, harmful, and prejudicial to the defendant and calculated to arouse passion, bias, and prejudice in the minds of the jury against the defendant. The court "reprimanded the solicitor-general, and directed the jury not to consider the argument," but overruled the motion for mistrial. That the language used was subject to the objection and criticism made can not be questioned. It will be recalled that this child was not the result of the act of sexual intercourse which constituted the offense of seduction, as alleged. The child was born on August 29, 1933, and was begotten in November, 1932. The alleged seduction took place in July, 1932. If the defendant be the father, it was still an issue for the jury whether he was guilty of seduction, as seduction was not necessarily involved in the act of conception. In a proceeding for bastardy, such remarks, if proper (which we do not concede), might have been justified. As was said in *Parker* v. *State,* 11 *Ga. App.* 251 (5) (75 S. E. 437): "In a trial for seduction, the maintenance and education of a child which may have been the result of the illicit connection is not involved, nor is its legitimacy affected by the verdict in the case. The prosecution for seduction is for the punishment of a public wrong, and not for redress of a private injury. It was error, therefore, for the court to allow the solicitor-general, over the objections of the accused, to urge that the defendant

should be convicted of seduction, in order that the child might have a legitimate father, and because the female alleged to have been seduced, and who would have to raise and maintain the child, should be protected." It does not appear from the record what was said by the court to the solicitor-general in reprimanding him. A prosecution for seduction may be stopped by a bona fide and continuing offer of marriage, but the offer to marry to which the statute refers can only be made before arraignment at the first trial. No offer to marry after there has been a trial of the case is within the provision of the statute. *Parker* v. *State,* 17 *Ga. App.* 252 (87 S. E. 705). The solicitor-general alone had no authority to "then stop the prosecution." The only effect of such an argument was to prejudice the minds of the jury against the defendant. However much we may sympathize with the lot of a child who has no father, or of a mother who has had no husband, an appeal to this sympathy by dramatic offers in an argument in the prosecution of a seduction case is highly improper, and does not meet with the approval of our conception of a fair trial. In *Duncan* v. *State,* 51 *Ga. App.* 97 (179 S. E. 638), it was said: "While the State is the accuser in criminal cases, it will not permit its representatives to use unfair means against the accused pending the trial, or to comment upon facts not put in evidence, or make remarks calculated to prejudice the accused in the minds of the jury." See also *Butler* v. *State,* 142 *Ga.* 286 (82 S. E. 654); *Smoot* v. *State,* 146 *Ga.* 76 (90 S. E. 715); *Bennett* v. *State,* 86 *Ga.* 401 (12 S. E. 806, 12 L. R. A. 449, 22 Am. St. R. 465). In *Ivey* v. *State,* 113 *Ga.* 1063 (39 S. E. 423, 54 L. R. A. 959), the Supreme Court, in condemning such arguments, said: "The solicitor-general appointed to represent the State in the trial of offenders, does not occupy the position of counsel generally. His duty does not require him to insist upon the conviction of the accused unless the evidence is sufficient to authorize it. His office is quasi judicial; and while it is his duty, if he honestly believes that the evidence shows the guilt of the defendant, to insist upon his view before the jury and to use in his argument all his ability and skill in presenting the case as made by the pleadings and the evidence, still it is under no circumstances, his duty to go outside the case and state facts not in evidence or to appeal to the passions or prejudices of the jury." In some cases a reprimand, when sufficiently vigorous, may

be sufficient to cure the error. In this case it is doubtful if any reprimand could have eradicated the effect of the hurtful, illegal, and prejudicial remarks of the prosecuting officer. The remarks being highly prejudicial, and a motion to declare a mistrial having been made, and it not appearing that the effects of such remarks were cured, we think a new trial should be granted.

*Judgment reversed. Broyles, C. J., and MacIntyre, J., concur.*