26016. REID *v.* THE STATE.

DECIDED JULY 2, 1937.

*J. W. Dennard, Strozier & Gower, John H. Hudson,* for plaintiff in error.

*Allan C. Garden, solicitor-general,* contra.

GUERRY, J. The defendant was convicted of arson. He excepted to the overruling of his motion for new trial.

Fletcher Reid, who was jointly indicted with the defendant but who was not on trial, was sworn as a witness for the State, and on direct examination the following occurred: Counsel for the State: "You told her on one Monday in March—" Counsel for the defendant: "We object to that." The court: "I will let you lead him; go ahead." Counsel for the defendant: "I want to take issue with the State's attorney that the State has not been entrapped by this witness." The court: "I don't care whether he is or not." Counsel for the defendant: "We object to that question on the further—" The court: "The question has not been asked yet; you jumped up and objected to a question before it was completed." Counsel for the State: "I will ask you this question: I am reading from your written statement that you signed on the first day of July, 1936." Counsel for the defendant: "We object to that statement being read to the jury; we are going to take the position that the State can not impeach its own witness." The court: "I have already ruled on it, Mr. Gower." Counsel for the State: "I will ask you this question: I am reading from your written statement that you signed on the 1st day of July, 1936. 'On one Monday in March, 1936, Aaron Reid went down to Mr. Jack Davis's filling-station, filled up his truck with gas, come back to his house and drawed it out and poured it in the tub, and sit it under the corner of the house, and takes his A-model truck, and moves his furniture to Oscar Weldon's house, and sent Fletcher to Vienna to take his wife and grocery and cooking things to his mother-in-law's, which was Nathan Toomer's house. He moved his radio and three 9 by 12 rugs, dishes, and silverware. I was on my way back from Vienna, and I met Aaron Reid, and he cut his lights off and on, so that I would know that it was him, Aaron Reid, and Dock Brown. He gets out of the truck and gets in the truck with his wife, and he goes

on home, and me and Dock Brown turns around [and] goes back home, and goes up the back alley. Why I got the furniture and sold it, I had two cold kills, and he took them from me, and I went and got the furniture and sold it to Mr. Bell and Mr. Dewey Hamilton and Mr. Jack Davis. I thought it was as much mine as it was his under the condition it was in,' Didn't you make that statement?" Complaint is made that "the court erred in permitting the solicitor-general, in asking his question, to read said statement to the witness Fletcher Reid, for the reason that it did not appear that the State had been entrapped, and that the State could not impeach its own witness." In this connection the motion for new trial continues: "It was thereupon developed that associate counsel for the State had knowledge of the statement read before the witness was placed upon the stand, and had knowledge that it had been repudiated by the witness in the commitment trial; and the court thereupon ruled out said statement and excluded it from the consideration of the jury, and instructed the jury not to give it any weight or consideration whatsoever in their deliberations on the case. Thereupon counsel for the defendant moved the court to declare a mistrial, on the grounds that the language contained therein was so highly prejudicial, so designedly drawn, so vicious in phraseology, and so calculating to impress the human mind, that in spite of all a juror might do he would be unable to entirely purge his mind of the impressions and thoughts that statement undoubtedly made upon it. The court overruled the motion, and instructed the jury not to give the statement of Fletcher Reid any consideration whatsoever nor any weight whatsoever in their consideration of the evidence in this case, and to expel from their minds and memories as far as they possibly could any thought or impression the statement might have made upon them. Movant contended at the trial of the case, and now contends that although the judge, after overruling defendant's motion for a mistrial and again instructed the jury to expel from their minds and memories, as far as they possibly could, any thought or impression the statement might have made upon them, yet the harmful error had been committed and the vicious statement had found lodgment in the minds of the jury, which movant contends it was impossible to remove."

We are of the opinion that under the facts of this case the judge should have granted the motion to declare a mistrial. The form of the question was improper, and its contents were so prejudicial that it thereafter became impossible for the accused to be accorded a fair and impartial trial. To allow such a question in this kind of case would subvert rules of procedure and evidence designed by the lawmakers to protect the defendant and guarantee him a fair trial. The witness having been introduced by the State, whether he had made such a statement was irrelevant to any issue on trial, unless the witness testified contrary to the statements made therein, and the solicitor could state in his place that he had been entrapped. If the solicitor did not know that the witness had already repudiated the statement, he could have gained all the force and effect of the witness's knowledge by asking him the truth of the facts contained in the statement, without any mention of the statement itself. If the witness testified to a state of facts contrary to that contained in the statement, the solicitor could then state to the court that he had been entrapped, and proceed to examine him concerning the statement. If the witness had repudiated the statement before the trial, and this was known to the solicitor, as long as he elected to use him as a witness for the State he had no right to get the statement before the jury in any form. If the solicitor had attempted to get the contents of the statement before the jury in his argument, there can be no doubt that his conduct would have been improper and erroneous. We can see little difference in attempting to get the contents of the statement before the jury in this way and attempting to get it before the jury in the nature of an improper question. The apparent purpose of this form of question was to impeach the witness. The form of the question was itself impeaching in character, and was permitted without the solicitor having stated, as required by the Code, § 38-1801, that he had been entrapped. It is true that a large discretion is given to the judge in allowing leading questions. However, a large discretion does not mean unlimited power without any restraint. If the witness proves hostile, or is of limited mental powers, or is very young, or other grounds appear which call for the necessity of counsel being allowed to lead his witness, the exercise of discretion by the judge in this connection should not be interfered

with. It is true that at a later stage of the case the judge ruled out the evidence and instructed the jury not to consider it in making up their verdict. However, the damage had been done; and we are of the opinion that the instructions did not have the effect of completely erasing from the minds of the jury the prejudice against the defendant put there by the reading of the statement of the witness Reid in their presence. This court has time and again ruled that mistrials should have been declared because of improper argument, although the court had instructed the jury not to consider the remarks made. *Barton* v. *State,* 53 *Ga. App.* 207 (3) (185 S. E. 530). The original opinion in this case, affirming the overruling of the motion for new trial, is withdrawn, and the above opinion substituted therefor.

*Judgment reversed. Broyles, C. J., and MacIntyre, J., concur.*