28135. BOYD *v*. THE STATE.

DECIDED MAY 10, 1940.   REHEARING DENIED JULY 30, 1940.

*Weir S. Gaillard,* for plaintiff in error.

*H. G. Vandiviere, solicitor-general, Howell Brooke,* contra.

MacINTYRE, J.   The defendant was charged with a violation of the statute regulating the driving of automobiles on public highways in two counts, the first for driving a car while under the influence of intoxicating liquor, and the second for driving on the wrong side of the road.   He was convicted, his motion for new trial was overruled, and he excepted.

■   Special grounds 1 and 2.   On May 20, 1939, two warrants were sworn out for the defendant, one for "driving *car* drunk" and the other for "leaving seen [scene] of reck [wreck]."   On the same date the defendant was arrested and gave bond.   On August 8, 1939, the grand jury returned an indictment against the defendant in two counts, the first for driving a car while under the influence of intoxicating liquor, and the second for driving on the wrong side of the road.   On August 8, 1939, the case was called for trial, and the defendant moved to quash the indictment on the ground that the solicitor-general was disqualified from acting further as State's counsel, as he was the third cousin of a witness for

the State whose automobile was alleged to have been damaged in the wreck from which the prosecution arose. The court thereupon appointed a solicitor-general pro tem., and quashed the indictment. On August 9, 1939, with the solicitor-general pro tem. acting as State's counsel, the same grand jury returned an indictment charging the defendant with the identical crime in identical counts as were contained in the indictment which was quashed. The defendant's counsel moved for a continuance on the ground that he had been employed only on the previous day, August 8, and was unprepared because of the shortness of the time, and that on account of the limited time he was unable to ascertain the whereabouts of the witnesses for the defendant, from whose testimony he would show that the defendant *was not driving the car,* nor was he drunk at the time and place alleged, and he was unable to subpœna these witnesses, and that several persons were with the defendant at this time, who knew that he was not driving or drunk, whom the defendant desired to use as witnesses, who were highly reputable persons but who could not be subpœnaed on such short notice; requested the court, if necessary, to permit the defendant to make a formal showing as to all these matters. "The court overruled this motion for continuance, without permitting defendant to make a formal showing, stating, defendant was in laches, he having been [arrested] under a warrant charging him with this offense and on which he had given bond May 20, 1939."

We do not think the court abused its discretion in overruling the motion for a continuance. The defendant had been arrested under warrants two and a half months before the trial, and had been out on bond ever since, and had opportunity for over two months to hire counsel and prepare his defense. *Shivers* v. *State,* 53 *Ga.* 149 (2); *Revel* v. *State,* 26 *Ga.* 275 (2); *Cox* v. *State,* 64 *Ga.* 374 (37 Am. R. 76). The defendant also argued that the warrants were for "driving *car* drunk" and for "leaving seen [scene] of reck [wreck]," and that the indictment was for driving the car while drunk and for driving on the wrong side of the road, and therefore, there being no warrant for driving on the wrong side of the road, that "he was without any intimation in advance that he would be tried under a charge of driving on the wrong side of the highway." There was but one indictment in two counts, charging violations of the statute regulating the driving of automobiles on public high-

ways at one and the same time and place. It is obvious that if the defendant's witnesses, which he stated he wished to bring into court, would testify that he was not driving the car at all, they would necessarily have to testify that he was not driving *the car on the wrong side of the road.* Thus nothing appears in the record which would show that if the defendant had not been guilty of laches and had prepared his defense according to the charge in the warrants, he would necessarily have prepared his defense to all the charges in the indictment. The transaction was not complicated, involving any mystery to be unraveled; there had been but few persons present, and they were known to the defendant. "As a general rule, the court before which the case is tried will be allowed a liberal discretion as to the continuance of cases; and this court will not interfere with it, unless it has been manifestly abused and injustice done." *Shivers* v. *State,* supra. Under the circumstances as disclosed in this case, we can not say that the judge erred in deciding that the defendant had had a reasonable time to prepare his defense.

The defendant's counsel moved to quash the second indictment in which the solicitor-general pro tem. had acted for the State, "for the reason the same grand jury returned both indictments, on identical grounds, and was actuated by the advice given them by Hon. H. G. Vandiviere, disqualified as solicitor-general, in returning the original indictment, thereby disqualifying this same grand jury from acting in the new case. Mr. Vandiviere, the disqualified solicitor-general, then arose and stated in his place that he did not advise the grand jury in returning the original indictment, did not sequester himself with them, but that he did word it, send it in to them, sign it after they had returned it; and that this was his custom. The court then overruled the motion to quash the reindictment." The solicitor-general having stated in his place in open court that he had not appeared or advised with the grand jury with reference to the first indictment, the court did not err in overruling the motion to quash the second indictment.

■ Special ground 3. "J. H. Holcomb, county commissioner of Cherokee County, father of Hulon Holcomb, witness for the State, whose automobile was damaged in the collision with the defendant's car, was seated in the court-room directly across from the jury, and in front of and to the right of the judge, near, in plain

sight and hearing of both and every one else in the court-room and galleries, and in a very conspicuous place. When defendant in making his statement said he was not driving nor drunk, J. H. Holcomb, who had not been sworn, began rising from his seat, convulsively shaking from head to foot and loudly exclaiming, 'I'll knock that out,' or 'May I say something?' and in an angry manner and voice muttering indistinct words; whereupon he was instructed by the court to sit down until he could be sworn as a witness. After defendant completed his statement, Holcomb passed by defendant and his counsel and advanced towards the solicitor-general pro tem., demanding to be sworn as a witness. The solicitor pro tem. qualified Holcomb as a witness. Before this was done defendant's counsel promptly arose and moved the court to grant a mistrial, orally, on the grounds that the witness's statement was unsworn; the witness was not sworn with the other witnesses; that his manner and prominence caused this incident to amount to a demonstration; that it had prejudiced the jury against defendant; and that it was now utterly impossible for defendant to have at the hands of the present jury a fair and orderly trial. The court overruled this motion, then directed the solicitor pro tem. to qualify the witness, after which being done the witness testified Mr. Boyd had admitted to him that he was driving the car, whereupon he told Mr. Boyd he would have to see his son about the amount of damage, which Mr. Boyd, the defendant, was offering to pay him." The defendant's counsel argues in a very able, unique, and picturesque manner that "J. H. Holcomb, not only spoke out of turn; not merely requested to make a statement, but demanded to make a statement. Aye! Before that he interrupted the statement of accused by loudly and angrily exclaiming, before being sworn as a witness, 'I'll knock that out!' While advancing towards him with a strange gleam in his eyes, mumbling vaporish words, and making of himself a huge 'one-man mob.' His manner and prominence locally, as silhouetted against the background of obscurity of accused, who was a stranger there, amounting to a harmful demonstration."

While the scene as it occurred there on that day might have excited counsel for the defendant, and caused his acute and fertile mind, in the light in which he saw the picture, to have envisioned a huge "one-man mob," or a person of such huge proportions and

prowess, as the giant portrayed in the story book of Jack the Giant Killer, which counsel had no doubt read in his boyhood days, and as an able lawyer, conscious of the rights of his client and the dignity and propriety of the court and the fitness of things, he well realized that it was improper to use physical force to stop the "one-man mob" or "to slay the Goliath," but that the proper and decorous thing to do was to call upon the strong arm of the law to protect the rights of the defendant; and he acted accordingly. However, it seems that in the light in which the judge saw the scene it portrayed to him an entirely different picture, that of a layman, inexperienced in courts and court procedure, wishing to obtain some way to be heard merely in order that he might refute or contradict the statement which the defendant had made to the jury, and using an unconsciously crude, indecorous, and unintentionally improper way of so doing. Persons often see the same picture in a different light and give contrary importance to its various details, and thus the picture as a whole presents to each a different conception of what occurred. While we fully realize that the defendant should be awarded a new trial where the verdict against him is the result of improper influence or practice brought to bear on the jury by the prosecutor or others, yet a motion for new trial on these grounds is addressed to the sound discretion of the court. The language of the prosecutor's father "I'll knock that out," or "May I say something?" in an angry manner in the presence of the jury immediately after the defendant, in his statement to the jury, had said that he was *not driving* the car at the time alleged in the indictment, is capable of more than one construction. However, the court evidently construed this language as meaning that the witness was undertaking to say to the court that he wished to make a statement which would refute or overthrow (or "knock out") the statement which had just been made by the defendant that he was *not driving* the car. This of course was improper, and was an improper way in which to refute the statement of the defendant, or bring to the attention of the court the fact that he wished to refute it; and if nothing had been done by the court except leave the party's unsworn testimony before the jury, and of necessity deprive the defendant of the right of cross-examining the witness as to the matter stated by him, a different aspect would have been presented. However, the court

ordered the witness to be seated, and directed that the solicitor-general pro tem. qualify the witness, and after the witness was qualified he testified that the defendant had admitted to him that he was driving the car, which was a direct contradiction under oath of the defendant's statement to the jury. Then the court allowed the defendant to cross-examine the witness as to this sworn statement. Thus the corrective measures which the judge thought proper to use were to suppress the improper conduct of Holcomb and require him to make the unsworn statement he had made in open court in the presence of the jury upon the witness-stand under oath, with the right of cross-examination by the defendant.

There are some matters of procedure in the trial of a case which must of necessity be left to the sound discretion of the judge. Generally speaking, we can not in this court get an accurate picture of some of the things which appear on the trial of a case; that is, the tones of the voices, the distinguishing mode or fashion of the doing of the act which may characterize it as orderly or otherwise, and the effect the shades and shadows of the attendant circumstances cast upon the picture of the occurrence in question. This court can not say that the judge committed reversible error by not declaring a mistrial, on motion by defendant's counsel, because of the improper conduct of Holcomb. There was no motion to reprimand, or to instruct the jury to disregard the statement or conduct of Holcomb. *Brooks* v. *State,* 183 *Ga.* 466 (188 S. E. 711, 108 A. L. R. 752). This, of course, would not relieve the judge of his duty, whether requested or not, to remove the prejudicial effect (if any) which the conduct of Holcomb might have been calculated to have against the defendant. *Georgia Power Co.* v. *Puckett,* 181 *Ga.* 386, 394 (182 S. E. 384). It is true the judge merely suppressed the improper conduct of Holcomb by telling him to be seated, and in effect requiring Holcomb's unsworn statement to be repeated on the witness-stand under oath, with the right in the defendant to cross-examine him.

We feel sure that if the able and careful judge in this case had construed the remark "I'll knock that out" to indicate that the party intended either then or thereafter to commit an assault on the defendant, or to do him personal physical harm, or to intimidate him, rather than merely in an unseemingly way to state that he wanted to have an opportunity to controvert the defendant's state-

ment, he would have taken vigorous measures to punish Holcomb or any other person guilty of such conduct in court, and would have taken such further action as would have preserved and protected the defendant's rights as well as the dignity of the court.

■ Grounds 4 and 5 except to the charge to the jury, contending that the evidence did not warrant or support a charge on confessions. These grounds are without merit. The record discloses that the judge charged on incriminating statements, but nowhere charged on confessions.

■ The evidence, while sharply in conflict, authorized the jury to find against the defendant.

*Judgment affirmed. Broyles, C. J., and Guerry, J. concur.*