29065. GRAYHOUSE *v*. THE STATE.

*Jule Felton*, for plaintiff in error.
*Charles H. Garrett, solicitor-general,* contra.

GARDNER, J. On an indictment for assault with intent to murder the defendant was convicted of assault and battery. The defendant moved for a new trial on the general grounds and on one special ground. The court overruled the motion and the defendant excepted.

1. First we consider the special assignment of error. This presents the question whether the court erred in not declaring a mistrial on timely motion by the defendant because of certain alleged questions by the solicitor-general and responses from a State's witness as follows: "Where did you spend the night last night?" "I was up to the jail." "How come you in the jail?" "I just stayed up there with the boys." "Did you ask them to put you in jail for your own protection?" "Yes, sir." "Who did you ask?" "I asked the sheriff." "To put you in jail to take care of you?" "Yes, sir." The defendant's counsel, the honorable Jule Felton, made the following motion: "I move a mistrial in this case [whereupon the court retired the jury]. My motion is that without anything in the world to suggest it or upon which to predicate it, the honorable Chas. H. Garrett, the solicitor-general of the Macon circuit, conducting the prosecution in this case, asked one Babe Ruth alias Will Dixon where he spent the night last night, and the response of the witness was he spent it in jail, and the solicitor asked the witness why he spent it in jail and he said he did it for his own protection. My motion is that the inference is made without proof, that counsel for the defense or some person interested in the defense has brought threats against the witness in the case, and that is the reason why he asked protection of the officers, and it is prejudicial and it is unauthorized and unlawful, and I ask your honor to declare a mistrial. . . I am a little sensitive and a little sensitive for my client. It looks like to me there has

been implication that the defendant has done something that made this witness apply for protection, and I move for a mistrial." And upon the solicitor-general stating: "I am willing to make a statement to the jury to the effect that no reflection was intended upon any one," counsel for the defendant continued: "I had rather not have a statement from the solicitor. We are asking the court for a mistrial."

The court denied the motion, returned the jury, and gave them the following instructions: "You will disabuse your minds entirely and not take into consideration at all in any verdict you may make up in this case any statement by a bailiff or any other officer of this court [the bailiff having previously announced in open court in the presence of the jury when the witness was called, that he was in jail] that this witness was confined in the jail last night. You will also erase from your mind and not consider it at all in making up your verdict any statement by this witness to the effect that he spent the night in jail last night, and you will not consider any reason he assigns for spending the night in jail. These matters are not to be considered on this trial and have no weight upon this trial, and should be entirely disregarded by you upon the issues on this trial."

Within the assignment and supplemental to the motion, the burden of insistence of defendant's counsel that the cause of the defendant had been prejudiced, was that upon the witness being placed on the stand early in the morning the solicitor-general, asking leading questions inducing answers when he knew that the implication arising from this allegedly illegal testimony could not by evidence be rebutted by the defendant without losing the concluding argument (the defense having been planned to save to the defendant the concluding argument), injected foreign matter as above indicated into the trial in order to carry, and did carry, to the jury the "inference and implication that if this witness needed protection from any one that it was undoubtedly on account of something which happened in this case, and was a direct implication that either movant's counsel or the defendant or some one interested in the case for the defendant had in some way oppressed or frightened this witness into asking protection and incarceration;" that the jury would presuppose that this solicitor-general would be bringing only such matters as were directly connected with the case,

and accordingly this testimony was highly improper and prejudicial to the defendant; that the solicitor-general was not rebuked; that the case was close on its facts and that the prejudice was not removed by the court's instructions to the jury, which rather was "liable to magnify and emphasize the implication that the movant or his counsel had in the interim [overnight] done some wrong," —all to the injury to the defendant.

The law is profound and conclusive in requiring for all defendants fair and impartial trials. "The State, as accuser in a criminal proceeding, does not seek one of its citizens convicted unless the evidence shows his guilt beyond a reasonable doubt; nor will it permit its prosecutor to use any unfair means in the trial . . to the prejudice of the accused." *Ivey* v. *State,* 113 *Ga.* 1062 (39 S. E. 423, 54 L. R. A. 959); *Hoxie* v. *State,* 114 *Ga.* 19, 22 (39 S. E. 944). "While the safety of society requires the faithful prosecution of offenders against the laws, the State does not ask their conviction but upon calm and dispassionate investigation of the charges against them." *Jesse* v. *State,* 20 *Ga.* 156, 169. To this end the duty rests primarily upon the trial judge to prevent the injection into the trial of extrinsic and prejudicial matters which have no basis in the evidence, whether arising by argument of counsel for the State (*Floyd* v. *State,* 143 *Ga.* 286, 289, 84 S. E. 971; *Sutton* v. *State,* 18 *Ga. App.* 162, 167, 88 S. E. 1005; *Seaboard Air-Line Railway* v. *Horning,* 18 *Ga. App.* 316 (3), 89 S. E. 493), or otherwise (*Lewis* v. *State,* 59 *Ga. App.* 388, 1 S. E. 2d, 62; *Reid* v. *State,* 56 *Ga. App.* 112, 91 S. E. 657). In all motions for mistrial, the grant of the motion "is largely within the discretion of the trial judge, and this discretion will not be interfered with unless manifestly abused." *Manchester* v. *State,* 171 *Ga.* 121 (7) (155 S. E. 11); *Georgia Power Co.* v. *Puckett,* 50 *Ga. App.* 720, 725 (7) (179 S. E. 284); *Mutual Life Insurance Co.* v. *Burson,* 50 *Ga. App.* 859, 864 (13) (179 S. E. 290); *Gibson* v. *Gibson,* 54 *Ga. App.* 187 (4) (187 S. E. 155); *Buchanan* v. *State,* 62 *Ga. App.* 541 (2) (8 S. E. 2d, 695); *Atlantic Coast Line Railroad Co.* v. *Jones,* 132 *Ga.* 189, 191 (14) (63 S. E. 834); *Powell* v. *State,* 179 *Ga.* 402 (176 S. E. 29). Usually cautionary instructions to the jury by the judge, where matters of procedure must be left to his sound discretion (*Boyd* v. *State,* 63 *Ga. App.* 84, 88, 10 S. E. 2d, 279), will suffice to cure irregularity and remove prejudice (*South-*

ern Railway Co. v. Tudor, 46 Ga. App. 563, 580, 168 S. E. 98; A. G. Boone Co. v. Owens, 54 Ga. App. 379 (3, 4), 187 S. E. 899; Simmons v. Williamson, 54 Ga. App. 559, 188 S. E. 362; Snell-ings v. Rickey, 57 Ga. App. 836, 838, 197 S. E. 44; Annunciatio v. State, 176 Ga. 787 (7), 793, 169 S. E. 3; Brown v. State, 57 Ga. App. 864, 197 S. E. 82; Hammond v. State, 166 Ga. 213 (2), 142 S. E. 895; Jones v. State, 24 Ga. App. 129 (5), 99 S. E. 893; Locklear v. State, 52 Ga. App. 87, 182 S. E. 534; Evans v. State, 115 Ga. 229, 41 S. E. 691; Taylor v. State, 17 Ga. App. 787 (2), 88 S. E. 696; Pulliam v. State, 30 Ga. App. 249 (2), 117 S. E. 822; Waller v. State, 164 Ga. 128 (4), 138 S. E. 67; Graham v. State, 39 Ga. App. 828, 148 S. E. 618). But, on the other hand, there are instances where the character of the prejudice is such that cautionary instructions to the jury and rebuke of counsel, either or both, fail to remove the harm done, when, in the interest of fair and impartial trials, mistrials must result. Morris v. Maddox, 97 Ga. 575 (3) (25 S. E. 487); Smoot v. State, 146 Ga. 76 (90 S. E. 715); Fair v. State, 168 Ga. 409 (148 S. E. 144); Cofield v. State, 14 Ga. App. 813 (82 S. E. 355); Thompson v. State, 27 Ga. App. 637 (109 S. E. 516); Reid v. State, 56 Ga. App. 112 (191 S. E. 657); Barton v. State, 53 Ga. App. 207 (3) (185 S. E. 530); Duncan v. State, 51 Ga. App. 97 (179 S. E. 638); Southern Railway Co. v. Black, 57 Ga. App. 592 (5) (196 S. E. 291); Southern Railway Co. v. Gentle, 36 Ga. App. 11 (135 S. E. 105); Brown v. Wilson, 55 Ga. App. 262, 264 (189 S. E. 860); Brooks v. State, 183 Ga. 466, 469 (188 S. E. 711).

Counsel for the defendant in effect insists that it was this nature of prejudice, while not by argument of the solicitor-general, but, as fully set out, by improper conduct of the solicitor-general in eliciting from the witness highly illegal testimony (Lewis v. State and Reid v. State, supra) that was "palpably inadmissible" and could only "harm and injure the defendant" (Lewis v. State and Reid v. State, supra), and that the only reasonable inference (Veazey v. Glover, 47 Ga. App. 826, 171 S. E. 732) was that injury resulted; that such foreign and extrinsic matter was highly prejudicial to a fair and just administration of the rights (Ivey v. State, supra; Mitchum v. State, 11 Ga. 615) of the defendant, and that, for the reasons fully assigned, it was error not to grant a mistrial.

In the outset it must be held that the case was not close on its

facts. The trial was for assault with intent to murder, and the conviction was for assault and battery. In the absence of alleged prejudice, the verdict was amply supported by the evidence, if not demanded.

However valuable the right of the concluding argument might be in a trial (*Fair* v. *State*, 168 *Ga.* 409, 420, 148 S. E. 144), if, notwithstanding the instructions of the court, prejudice in its inherent evil resulted to the merits of the cause, the necessity of losing the conclusion by introducing evidence to rebut the prejudicial effect of the evidence became harmless; the original prejudice would constitute the efficient error, not the loss of the conclusion. If prejudice did not inherently result, the question of conclusion became purely a question of strategy of trial.

Next we consider the complaint as to the failure of the court to rebuke the solicitor-general as rendering the instructions of the court to that extent ineffectual to remove the alleged prejudice. Conceding, but not deciding, that the spirit if not the letter of the Code, § 81-1009, ordinarily required the rebuke, we do not think the defendant, under the circumstances, can complain. In *Berry* v. *State*, 10 *Ga.* 511 (6), the court held: "For counsel to attempt surreptitiously to get before the jury facts by *way of supposition*, which have not been proven, is highly reprehensible; and the practice should be instantly repressed by the court without waiting to be called upon by the opposite party." See *Western & Atlantic R. Co.* v. *Cox*, 115 *Ga.* 715, 719 (42 S. E. 74) ; *O'Dell* v. *State*, 120 *Ga.* 152, 156 (47 S. E. 577) ; *Pelham & Havana R. Co.* v. *Elliott*, 11 *Ga. App.* 621 (75 S. E. 1062) ; *Ivey* v. *State*, supra. "For counsel to undertake by a side wind, to get that in as proof which is merely conjecture, and thus to work a prejudice in the mind of the jury, can not be tolerated. Nor ought the presiding judge to wait until he is called on to interpose." *Berry* v. *State*, supra. The State will not "permit its prosecuting officer to use any unfair means in the trial . . to the prejudice of the accused." *Ivey* v. *State*, supra.

In the instant case we do not think the solicitor-general comes under the condemnation of the rules. Whatever may be the motives charged against him by the defendant in eliciting the allegedly illegal testimony, he, in his place, while the jury was retired and the motion for mistrial was being considered, stated: "I am

willing to make a statement to the jury to the effect that no reflection was intended upon any one." Counsel for defendant stated: "I had rather not have a statement from the solicitor. We are asking the court for a mistrial." Whether or not the alleged prejudice could thereby have been removed is beside the question. However, the defendant insists that the jury would presuppose that this solicitor-general would be bringing only such matters as were directly connected with the case, thus enforcing the harmful effects of the allegedly illegal testimony. By the same token it may be considered that the jury would also presuppose that the solicitor-general would not be making the statement that "no reflection was intended upon anyone" without it being true. The offer was made, and we do not think that the defendant can now complain that no rebuke was administered. We do not mean to say that counsel for defendant should have yielded, and permitted the solicitor-general to make the statement, and thereby take chance on any harmful effect of such testimony being removed. It was not only his right but his duty to act at any point in the trial when he thought the interests of his client were being illegally prejudiced; but, having acted, he became bound by the status of the case when the motion was made.

We come now to the crux of the complaint, that there arose from this testimony an implication that either the defendant, his counsel, or some one interested in the defense, had threatened the State's witness, and that it had become necessary for him to seek refuge in the county jail, and that this implication of violence influenced the jury to return a verdict not supported by the evidence and other than they would have returned in the absence of the prejudicial implication. Granting that this implication inhered in this testimony, it is not certain that such threats were traceable to the defendant. It is obvious that their origin could rest only in conjecture, and it is doubtful that the jury were influenced in any degree of certainty as to their existence or origin. But conceding that the implication nevertheless abided, with responsibility therefor chargeable to the defendant, it does not appear as a matter of law that his rights were prejudiced and that an unwarranted verdict was returned. Either the jury acted from bias or spite, or acted unwittingly with their sense of judgment clouded as to all the facts and circumstances of the case by the implication of threats

-to the witness, causing them to return a verdict by finding one theory of the case to be true, when, without the prejudice, they would have found another to be true, in the latter event acquitting the defendant. In the absence of any showing to the contrary it must be assumed that the jury was fair and impartial, and did not act consciously, because of the alleged implication, from spite or bias. As to the degree of the verdict, the defendant can not complain. It was a conviction of the lowest offense possible under the indictment. As between the verdict of guilty of assault and battery as returned and a verdict of not guilty, which defendant insists should have been returned, without considering at all the testimony of the threatened witness (though it is not insisted that his testimony was influenced adversely to the defendant because of the "threats"), we think under the testimony alone of the prosecutor, Braswell, a verdict was amply authorized, and, save for the defendant's statement, demanded. We fail to see anything in the defendant's statement which would have prompted its acceptance in whole or in part for an acquittal, in preference to the sworn testimony of the prosecutor. But since the jury could have accepted his statement in preference to the sworn testimony, we can not see from all the facts and circumstances that it should have been so accepted. We can not say, as a matter of law, that it would have been so accepted except for the alleged prejudice. But prejudice is subtle. If any existed we think the instructions of the court were ample to remove any harm originally arising, and to prevent the verdict from being illegally infected thereby. It not being apparent "that a mistrial was essential to preservation of the right of fair trial, the discretion [of the trial judge] will not be interfered with." *Manchester v. State*, 171 *Ga*. 121 (7), 132 (155 S. E. 11).

2. The evidence supported the verdict and the court did not err in overruling the motion for new trial.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*

DECIDED SEPTEMBER 27, 1941.