**SECOND DIVISION**
**BARNES, P. J.,**
**MCFADDEN and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**March 7, 2013**

# In the Court of Appeals of Georgia

A12A2000. THOMPSON v. THE STATE.

BARNES, Presiding Judge.

Douglas Thompson and five co-defendants were indicted for crimes arising from a home invasion that involved three victims, and the co-defendants were also indicted for additional crimes related to two more armed robberies that occurred later the same evening. A jury convicted Thompson of four counts of aggravated assault, three counts of false imprisonment, and one count each of armed robbery, burglary, possession of marijuana with intent to distribute, and possession of a firearm during commission of a felony, and the trial court sentenced him to an aggregate of 40 years, to serve 20 incarcerated followed by 20 on probation. On appeal, Thompson argues that the evidence was insufficient as to the crimes other than the drug offense, that he was entitled to a directed verdict due to a substantial variance between the indictment

and evidence, and that the trial court erred in allowing the State to impeach witnesses without a proper foundation and by allowing the prosecutor to sit in the witness stand during closing argument. For the reasons that follow, we affirm.

1. Thompson argues that the evidence was insufficient to support the verdict. On appeal, a reviewing court must view the evidence in the light most favorable to the verdict, no longer presuming the defendant is innocent. *Anthony v. State*, 317 Ga. App. 807 (732 SE2d 845) (2012). Consistent with *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), we neither weigh the evidence nor decide if witnesses were credible, but only determine whether the evidence, viewed in the light most favorable to the verdict, is sufficient to sustain the convictions. *Campbell v. State*, 278 Ga. 839, 840 (1) (607 SE2d 565) (2005).

Viewed in that light, the evidence at trial established that around midnight on September 15, 2010, Thompson kicked in a door and entered an apartment occupied by three men. Thompson and two or three other intruders began screaming at the men to get on the floor. One man was forced to the living room floor at gunpoint, another was herded from a back bedroom to the living room, and the third victim jumped out of the window. That victim, who testified at trial through an interpreter, was captured at gunpoint when he returned to the apartment to help his friends. The intruders

searched the apartment and took one of the victim's wallet and the keys to his work van, then left. A neighbor called 911 and officers responded. One of the officers interviewed a victim, who described the incident and the intruders' height, weight, and race, although their faces were covered. The officer noted that the victims' door frame was shattered and a footprint on the door indicated it had been kicked in.

Several hours later, three armed robberies took place within 40 minutes of each other. One of the victims found a DeKalb County police officer and was reporting the crime when he spotted the robbers driving by. The officer saw the occupants throw objects from the car, pulled it over, and placed the six occupants under arrest. Gwinnett County officers responded to the arrest because the robberies had taken place in Gwinnett, and a crime scene investigator collected two handguns and other items from the roadside. A Gwinnett County detective assigned to investigate the home invasion and the armed robberies interviewed the arrestees, some of whom finally admitted they were involved with the robberies and identified Thompson as one of the robbers in the home invasion. Several also said during interviews that Thompson had provided the guns used in the string of robberies. Based on these statements, the police obtained and executed a search warrant for Thompson's house, where they found marijuana, digital scales, and a device used to grind marijuana.

Several of Thompson's co-defendants pled guilty to various crimes and testified that Thompson provided the guns and participated in the home invasion. One co-defendant testified that someone in the group had identified the apartment as belonging to a drug dealer, and that he rode to the scene of the invasion with Thompson in Thompson's car. The co-defendant had planned to take any money they found and Thompson had planned to take any drugs they found. Six other people rode to the scene of the invasion in a separate vehicle. Thompson kicked the door in and he and the co-defendant entered the apartment with handguns, but they found no drugs or money. The group returned to their own neighborhood, and everyone but Thompson went back out and committed the other armed robberies. In contrast, Thompson and his girlfriend both testified that he had been home on the night of the home invasion.

Thompson argues on appeal that the only testimony implicating him in the crimes came from co-defendants who had all made deals with the prosecution in exchange for testifying against him. He contends that this evidence was insufficient because the only victim who testified could not identify him, his fingerprints were not found on the weapons or at the scene, no stolen items were found in his house, and he and his fiancee both testified that he had been home all night.

4

While a defendant may not be convicted on the uncorroborated testimony of one accomplice, only slight evidence is required to corroborate it. *James v. State*, 316 Ga. App. 406, 408 (1) (730 SE2d 20) (2012). Former OCGA § 24-4-8.[1] Further, if "more than one accomplice testifies at trial, the testimony of one accomplice may be corroborated by the testimony of the others." *Hanifa v. State*, 269 Ga. 797, 808-809 (7) (505 SE2d 731) (1998). While Thompson argues that when "the self-serving testimony of these accomplices is the only corroborating evidence, this rule should not be applied as a matter of fundamental fairness," as the State notes, four accomplices identified Thompson as providing the guns for the home invasion and driving there in his own car. Further, two of those four identified Thompson as the person who kicked in the front door, entered the apartment first, and held a gun to one victim's head. Finally, the accomplices, including a girl who was 13 when the crimes were committed, identified Thompson as a participant more than a year before they tendered their guilty pleas.

The accomplices' testimony concerning Thompson's participation in the crimes related to the home invasion was sufficiently corroborated to authorize the denial of

---

[1]OCGA § 24-4-8 was repealed by the new evidence code and reenacted as OCGA § 24-14-8 (2013).

his motion for a directed verdict of acquittal. *Hanifa*, 269 Ga. at 809 (7). Accordingly, the evidence as outlined above was sufficient for a rational trier of fact to find Thompson guilty beyond a reasonable doubt of the offenses charged. *Campbell,* 278 Ga. at 840 (1).

2. Thompson contends that the trial court erred in denying his motion for a directed verdict based on a fatal variance between the indictment and the evidence. A motion for a directed verdict of acquittal should be granted only when there is no conflict in the evidence and the evidence with all reasonable deductions and inferences therefrom demands a verdict of acquittal as a matter of law. OCGA § 17-9-1 (a); *Taylor v. State*, 252 Ga. 125, 127 (1) (312 SE2d 311) (1984).

Thompson was indicted for and convicted of the armed robbery and false imprisonment of Israel Cruz, the aggravated assault and false imprisonment of Pedro Moncera Arellano, and the burglary of the dwelling house of Israel Cruz, Pedro Moncera Arellano, and Luis Perez. At trial, one of the victims identified himself variously as Luis Garcia, Luis Roberto Garcia, and Alberto Garcia, and the investigating officer testified that the victim had given his name as "Luis Roberto Garcia-Perez." Perez testified about the home invasion, during which his roommates "Israel Penya" and "Pedro Moncero" were present. When asked to refer to the other

victims using "their whole name," the witness replied, "I just know his name like that, Israel." He later testified that when the robbers burst into the apartment, "Israel" was asleep in the living room and "Pedro was in his room." The robbers placed "Israel" on the ground and brought "Pedro" out of his room into the living room, and when they left they took a wallet of "Israel's."

Thompson contends that, because the evidence at trial identified two of the victims as "Israel Penya" and "Pedro Moncera" but not "Israel Cruz" and "Pedro Moncera Arellano," he was entitled to directed verdicts on the charges involving Cruz and Arellano. We disagree.

If "a variance exists between the victim's name as alleged in the indictment and as proven at trial, . . . the variance is not fatal if the two names in fact refer to the same individual, such as where a mere misnomer is involved or where the variance is attributable to the use of a nickname or alias by the victim." *Harrison v. State*, 192 Ga. App. 690, 691 (1) (385 SE2d 774) (1989). While Thompson points out, correctly, that the State put forth no evidence to demonstrate the cause of the variance between the victim's names in the indictment and the victim's names adduced at trial, our law does not require an explanation for why the names were different; it only requires that the different names actually refer to the same person.

That the controlling issue is the identity of the person, not the similarity of the name, was first described in *Chapman v. State*, 18 Ga. 736 (1855). Our Supreme Court explained the reasoning as follows:

> The change continually going on in the mode of spelling names – the different pronunciation of the same name, according to the circumstances and condition in life of the owner, makes the objection, upon the score of discrepancy, much less material than formerly. Idems sonans is no longer an infallible test. Identitate personae, and not identitate nominis, is and should always have been the true and only issue.

(Emphasis omitted.) Id. at 738.

So a grand juror identified as "Hutson" instead of "Hudson" was not grounds to quash an indictment. *Chapman*, 18 Ga. at 738. Nor was a defendant being identified in an indictment as "John Biggers" instead of "John Bickers,"[2] or a victim identified as "J. W. Willoughby" instead of "J. B. Willoughby,"[3] as Connie Lynn

---

[2] *Biggers v. State*, 109 Ga. 105, 106 (34 SE 210) (1899).

[3] *Gresham v. State*, 216 Ga. 106, 109 (5) (115 SE2d 191) (1960).

Day" instead of "Connie Anne Day,"[4] as "Clayburn" instead of "Cleveland;"[5] or as "Blossom Henderson" instead of "Daisy M. Henderson."[6]

The difference in one victim's name between the indictment – Pedro Moncera Arellano – and the proof – Pedro Moncero – is much like the differences in the cases cited. The first two names are the same in both instances, and circumstantial evidence is strong that both names refer to the same person, one of the three men whose residence was invaded by Thompson and the other defendants. The difference between the names of Israel Cruz and Israel Penya is greater, but the issue is still whether the State presented sufficient evidence to allow a reasonable trier of fact to conclude that the two names referred to the same person. The third victim testified that he had two roommates, one named Israel, who were also present when armed men invaded his residence, and one of Thompson's co-defendants who entered the apartment testified that there were three men inside. Considering the evidence as a whole, the State presented sufficient evidence to allow a reasonable trier of fact to conclude that the names in the indictment referred to the victims present during the

---

[4]*Tate v. State*, 104 Ga. App. 699 (1) (122 SE2d 528) (1961).

[5]*Wilson v. State*, 67 Ga. App. 404 (20 SE2d 433) (1942)

[6]*Bland v. State*, 182 Ga. App. 626 (356 SE2d 704) (1987)

9

home invasion. Therefore, the trial court did not err in denying Thompson's motion for a directed verdict as the counts involving these victims.

3. Thompson contends that the trial court erred in allowing the State to impeach him and his witness without a proper foundation. After Thompson and his fiancee testified and the defense rested, the trial court allowed the State over objection to recall the detective to the stand in rebuttal to testify about statements Thompson and his fiancee made that contradicted their trial testimony. He argues that the proper way to impeach him or his witness would have been to show them their prior statements and then pose questions regarding any discrepancies.

Thompson's fiancee confirmed during cross-examination that she remembered talking to a detective and giving a statement, and that she had had an opportunity to review that statement. During his direct examination, Thompson testified that he gave a statement to the police, that he told them he did not rob, he sold drugs, that they would find evidence of drug possession with intent at his house, that he was not involved in this home invasion, that he had been at home that night, and that he told them the same thing he was telling the jury. During cross-examination, he testified that he told the detective that no one had used his car that night and no one had asked to borrow it, and when asked if he told the detective that his co-defendant had

10

borrowed his car, he responded, "That is a lie. I never said that, ma'am," and proceeded to explain what he did say. He testified that he did not tell the detective he had experience with guns, then qualified the definition of "experience." He testified that he did not tell the detective that he had a second phone for his other girlfriend, but rather said he had a second phone for "another female, not girlfriend. Big difference." He testified that he did not change his story about his phone numbers during his interview with the detective, did not tell him he was "cool" with one of the co-defendants because he brought his car back without scratches, and did not say it was possible somebody had "put" him at the home invasion.

On rebuttal, the detective testified about differences between the fiancee's statement to him and her testimony at trial, and about Thompson's statement to him and his testimony at trial. For example, the detective testified that Thompson told him he let his co-defendant borrow his car that evening, and that "possibly one person could put him" at the scene of the home invasion but he did not see how six people could say he was there.

11

Under former OCGA § 24-9-83,[7] a witness could be impeached by his previous contradictory statements about relevant matters. Before proving the contradictory statements, the witness should be reminded about "the time, place, person, and circumstances" of the previous statements, which should be shown to him if in writing and available, and the witness may be recalled to lay this foundation. OCGA § 24-9-83. Furthermore, "a prior inconsistent statement of a witness who takes the stand and is subject to cross-examination is admissible as substantive evidence. The fact that the witness might be one involved in the crime does not make his prior inconsistent statements inadmissible." *White v. State*, 268 Ga. 28, 33 (6) (486 SE2d 338) (1997). See also *Williams v. State*, 304 Ga. App. 592, 595 (3) (696 SE2d 512) (2010). The trial court did not err in allowing the State to question a police officer in rebuttal about inconsistent statements from Thompson or his fiancee.

4. Finally, Thompson argues that the trial court erred by overruling his objection when the prosecutor sat in the witness stand during closing argument, citing *Grayhouse v. State*, 65 Ga. App. 853, 855-856 (16 SE2d 787) (1941). He contends that allowing the prosecutor to do so "suggests to the jury that evidence presented

---

[7]Effective for trials conducted after January 1, 2013, OCGA § 24-9-83 was repealed and replaced by OCGA §§ 24-6-613 (b), 24-6-621, 24-8-801 (d) (1) (A).

12

from that chair is aligned with the prosecution" and constituted "unfair means in the trial to the prejudice of the accused."

In *Grayhouse*, this court found no error in denying a defendant's motion for mistrial after the prosecutor asked a witness about having voluntarily spent the previous night in jail for his own protection. 65 Ga. App. at 853. After discussing "the profound and conclusive" requirement that all defendants receive fair and impartial trials, this court affirmed, holding that, absent evidence to the contrary, "it must be assumed that the jury was fair and impartial, and did not act consciously, because of the alleged implication, from spite or bias." Id. at 855, 859.

During closing argument in this case, the prosecutor sat in the witness box for two and a half pages out of a fifteen-page transcript while discussing some of the co-defendants' testimony.

> As for the assertion it was error to permit the assistant district attorney to sit in the witness chair as he addressed the jury during closing argument, we note counsel is permitted wide latitude in closing argument, and any limitation of argument is a matter for the court's discretion. No principle is better settled than that in the conduct of trials, both civil and criminal, a broad discretion is vested in the judge below, and that that discretion will not be controlled by this court unless it is manifestly abused. Seeing no manifest abuse of discretion, we affirm the judgment of conviction.

(Citations and punctuation omitted.) *Watkins v. State*, 278 Ga. 414, 415 (2) (603 SE2d 222) (2004).

*Judgment affirmed. McFadden and McMillian, JJ., concur*.