**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER, and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**January 24, 2014**

# In the Court of Appeals of Georgia

A13A1860. LAMBERT v. THE STATE.

BARNES, Presiding Judge.

A jury found Charlie James Lambert guilty of aggravated assault, terroristic threats, possession of a firearm during the commission of a crime, and possession of a firearm by a convicted felon. Lambert appeals from the denial of his motion for new trial, contending that the evidence was insufficient to support the verdict. Upon our review, we affirm.

Following a criminal conviction,

we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence. We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of [each] crime beyond a reasonable doubt.

(Citations and punctuation omitted.) *Sidner v. State*, 304 Ga. App. 373, 374 (696 SE2d 398) (2010). See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

Construed in favor of the prosecution, the evidence showed that Lambert did yard work for the victim at her house in Burke County. Three or four weeks after meeting Lambert, the victim allowed him to move into a bedroom in her house "[b]ecause he needed a place to live and [she] had extra rooms." While Lambert lived with her, the victim would sometimes drive him to the store where she would purchase alcohol for him.

On the day in question, Lambert asked the victim to drive him to the store and purchase some alcohol. When she refused, he became angry. The victim then went outside to speak with her next-door neighbor. While the victim was speaking with her neighbor in the yard, Lambert came out of the house carrying a Winchester 30-30 rifle owned by the victim. At that point, Lambert's sister drove up and saw Lambert holding the rifle. Lambert "ran . . . off" the neighbor and his sister and then forced the victim into the house at gunpoint.

Once inside the house, Lambert made the victim get down on the floor in the living room and begin to pray. Lambert told the victim that he had one bullet for him,

one for her, and one for her granddaughter who lived next door. While pointing the rifle at her face and chest, Lambert asked the victim where she wanted the bullet. He cursed at the victim and threatened to kill her.

While Lambert was inside the house with the victim, his sister called the police, who responded to the scene and established a perimeter. One of the responding officers interviewed Lambert's sister, who said that Lambert had a rifle, was holding the victim hostage inside the house, and had threatened to "blow [the victim's] head off." Lambert's brother was contacted by another family member and came to the police staging area, where he spoke with Lambert on speaker phone while the police listened. Lambert told his brother that he was "too late" because the victim was already dead. However, Lambert then let the victim speak briefly with his brother before hanging up the phone.

Lambert held the victim at gunpoint in the house for approximately three hours. He ultimately allowed the victim to leave the house when she feigned a heart attack and begged to go to the hospital. Officers took Lambert into custody after the victim left the house. They found the Winchester 30-30 rifle on the living room floor.

At trial, the victim testified to the events discussed above. Lambert's brother testified about his phone conversation with Lambert in the presence of the police.

3

Lambert's sister took the stand and denied telling the responding officer that Lambert was holding the victim hostage or had threatened to blow her head off, but the officer later testified otherwise. One of the responding officers also testified regarding the rifle that had been found in the living room after Lambert was apprehended. Lambert did not testify or call any witnesses on his behalf.

After hearing all of the testimony, the jury found Lambert guilty of aggravated assault, terroristic threats, and possession of a firearm during the commission of a crime. The State then introduced evidence of Lambert's prior conviction for rape, and the jury found him guilty of possession of a firearm by a convicted felon. Lambert filed a motion for new trial, which the trial court denied, resulting in this appeal.

1. Lambert contends that there was insufficient evidence to convict him of aggravated assault. A defendant is guilty of simple assault if he "[a]ttempts to commit a violent injury to the person of another" or "[c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury." OCGA § 16-5-20 (a). If the assault is committed "with a deadly weapon," the defendant is guilty of aggravated assault. OCGA § 16-5-21 (a) (2). Here, the indictment averred that Lambert committed aggravated assault by pointing the rifle at the victim.

The victim testified that Lambert held her at gunpoint with the Winchester rifle, that she thought he was going to kill her, and that she was afraid for her life. The testimony of the victim, standing alone, was sufficient to sustain Lambert's conviction for aggravated assault. See *Lomax v. State*, 319 Ga. App. 693, 694 (1) (738 SE2d 152) (2013). See also former OCGA § 24-4-8 ("The testimony of a single witness is generally sufficient to establish a fact.").[1] Although Lambert asserts that the victim "was an incredible witness and was contradicted on several points," "[it] is for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence." (Citations and punctuation omitted.) *Farris v. State*, 290 Ga. 323, 324 (1) (720 SE2d 604) (2012).

2. Lambert also contends that there was insufficient evidence to convict him of terroristic threats because there purportedly was no evidence corroborating the victim's testimony regarding the threat. "A person commits the offense of a terroristic threat when he or she threatens to commit any crime of violence with the purpose of terrorizing another." (Citation and punctuation omitted.) *Maskivish v. State*, 276 Ga.

---

[1] Because the present case was tried January 2012, the new Georgia Evidence Code does not apply. See Ga. Laws 2011, Act 52, § 101 ("This Act shall become effective on January 1, 2013, and shall apply to any motion made or hearing or trial commenced on or after such date.").

5

App. 701, 703 (2) (624 SE2d 160) (2005). See OCGA § 16-11-37 (a). Here, the indictment averred that Lambert committed the crime of terroristic threats by threatening to murder the victim.

It is true, as Lambert argues, that a defendant cannot be convicted of terroristic threats based on "the uncorroborated testimony of the party to whom the threat is communicated." OCGA § 16-11-37 (a).

> Nevertheless, it is well established that the quantum of corroboration need not in itself be sufficient to convict, but need only be that amount of independent evidence which tends to prove that the incident occurred as alleged. Slight circumstances may be sufficient for corroboration and the question of corroboration is one solely for the jury. If there is any evidence of corroboration, this court will not go behind the jury verdict and pass on its probative value.

(Citation and punctuation omitted.) *Schneider v. State*, 312 Ga. App. 504, 506 (1) (718 SE2d 833) (2011).

Lambert's brother testified about the phone conversation in which Lambert told him that the victim was already dead. The State also presented evidence that, contrary to her trial testimony, Lambert's sister told a responding officer that Lambert was holding the victim hostage and had threatened to blow her head off. See generally *Thompson v. State*, 320 Ga. App. 150, 156 (3) (739 SE2d 434) (2013) (noting that "a

6

prior inconsistent statement of a witness who takes the stand and is subject to cross-examination is admissible as substantive evidence") (citations and punctuation omitted). Lastly, one of the responding officers testified that the Winchester rifle identified by the victim as the one used to hold her at gunpoint was found on the floor in the living room upon Lambert being taken into custody. This combined testimony clearly was sufficient to corroborate the victim's testimony regarding the threat made by Lambert and thus to sustain his terroristic threats conviction. See, e.g., *Mullins v. State*, 298 Ga. App. 368, 371-372 (2) (680 SE2d 474) (2009) (witness's testimony that she overheard defendant threaten victim provided sufficient corroboration); *Wilson v. State*, 291 Ga. App. 263, 264 (1) (661 SE2d 634) (2008) (testimony that gun was recovered from presence of defendant minutes after the incident constituted some evidence corroborating the victim's testimony about the threat).

3. Lambert further contends that because there was insufficient evidence to convict him of aggravated assault and terroristic threats, the "logical conclusion" is that there likewise was insufficient evidence to convict him of possession of a firearm during the commission of a crime.[2] Because there was sufficient evidence to support

---

[2] Lambert does not challenge his conviction for possession of a firearm by a convicted felon.

7

Lambert's convictions for aggravated assault and terroristic threats as discussed supra in Divisions 1-2, his contention is misplaced.

*Judgment affirmed. Miller and Ray, JJ., concur.*